**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

_____
)
CONSERVATION LAW FOUNDATION,　　)
INC.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
Plaintiff,　　　　　　　　　　　　　)　　Case No. _____
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　**COMPLAINT FOR DECLARATORY**
MASSACHUSETTS DEVELOPMENT　　)　　**AND INJUNCTIVE RELIEF AND**
FINANCE AGENCY; LAUREN A. LISS, in　)　　**CIVIL PENALTIES**
her official capacity as PRESIDENT AND　)
CHIEF EXECUTIVE OFFICER of the　　)
MASSACHUSETTS DEVELOPMENT　　)
FINANCE AGENCY; JAY ASH, in his official )
capacity as CHAIR of the MASSACHUSETTS )
DEVELOPMENT FINANCE AGENCY;　　)
BRIAN KAVOOGIAN, in his official capacity )
as VICE CHAIR of the MASSACHUSETTS　)
DEVELOPMENT FINANCE AGENCY; JAY　)
ASH, in his official capacity as CHAIR of the )
MASSACHUSETTS DEVELOPMENT　　　)
FINANCE AGENCY; JAMES E. CHISHOLM, )
in his official capacity as BOARD MEMBER of )
the MASSACHUSETTS DEVELOPMENT　　)
FINANCE AGENCY; JAMES W. BLAKE, in　)
his official capacity as BOARD MEMBER of　)
the MASSACHUSETTS DEVELOPMENT　　)
FINANCE AGENCY; KAREN GRASSO　　)
COURTNEY, in her official capacity as　　)
BOARD MEMBER of the MASSACHUSETTS )
DEVELOPMENT FINANCE AGENCY;　　)
PATRICIA MCGOVERN, in her official　　)
capacity as BOARD MEMBER of the　　　)
MASSACHUSETTS DEVELOPMENT　　　)
FINANCE AGENCY; GRACE FEY, in her　　)
official capacity as BOARD MEMBER of the　)
MASSACHUSETTS DEVELOPMENT　　　)
FINANCE AGENCY; RACHEL MADDEN, in )
her official capacity as BOARD MEMBER of　)
the MASSACHUSETTS DEVELOPMENT　　)
FINANCE AGENCY; JUAN CARLOS　　　)
MORALES, in his official capacity as BOARD )

MEMBER of the MASSACHUSETTS )
DEVELOPMENT FINANCE AGENCY; )
CHRISTOPHER P. VINCZE, in his official )
capacity as BOARD MEMBER of the )
MASSACHUSETTS DEVELOPMENT )
FINANCE AGENCY; DEVENS ENTERPRISE )
COMMISSION; WILLIAM P. MARSHALL, in )
his official capacity as CHAIRMAN of the )
DEVENS ENTERPRISE COMMISSION; )
WILLIAM CASTRO, in his official capacity as )
BOARD MEMBER of the DEVENS )
ENTERPRISE COMMISSION; DIX DAVIS, in )
his official capacity as BOARD MEMBER of )
the DEVENS ENTERPRISE COMMISSION; )
ARMEN DEMERIJAN, in his official capacity )
as BOARD MEMBER of the DEVENS )
ENTERPRISE COMMISSION; JAMES E. )
DEZUTTER, in his official capacity as BOARD )
MEMBER of the DEVENS ENTERPRISE )
COMMISSION; MELISSA FETTERHOFF, in )
his official capacity as BOARD MEMBER of )
the DEVENS ENTERPRISE COMMISSION; )
CHRISTOPHER LILLY, in his official capacity )
as BOARD MEMBER of the DEVENS )
ENTERPRISE COMMISSION;JOHN )
OELFKE, in his official capacity as BOARD )
MEMBER of the DEVENS ENTERPRISE )
COMMISSION; JIM PINARD, in his official )
capacity as BOARD MEMBER of the DEVENS )
ENTERPRISE COMMISSION; MARTIN )
POUTRY, in his official capacity as BOARD )
MEMBER of the DEVENS ENTERPRISE )
COMMISSION; J. PAUL ROUTHIER, in his )
official capacity as BOARD MEMBER of the )
DEVENS ENTERPRISE COMMISSION; and )
ERIC STOLTZUS, in his official capacity as )
BOARD MEMBER of the DEVENS )
ENTERPRISE COMMISSION, )
)

Defendants

2

## INTRODUCTION

1.     This action is a citizen suit brought under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, as amended, to address violations of effluent standards and limitations including significant water-quality problems and programmatic deficiencies associated with the municipal separate storm sewer system ("MS4") owned and/or operated by the Massachusetts Development Finance Agency ("MassDevelopment"), and the Devens Enterprise Commission ("DEC"). Plaintiff Conservation Law Foundation ("CLF") seeks declaratory judgment, injunctive relief, and other relief with respect to the actions and failures to act by MassDevelopment and its Chief Executive Officer, Chair, Vice Chair, and Board Members, as well as, DEC and its Chairman and Board Members. These actions and failures by MassDevelopment, DEC, and their respective executives and board members have resulted in discharges of pollutants into waters of the United States without either a general or an individual municipal separate storm sewer system permit, in violation of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and applicable Clean Water Act regulations.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. §§ 2201 and 2202 (declaratory judgment).

3.     Pursuant to Section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135, Plaintiff notified Defendants of their violations of the Clean Water Act, and of Plaintiff's intent to sue under the Clean Water Act, by letter dated and sent to them via certified mail on January 23, 2018 ("Notice Letter"). A true and accurate copy of the Notice Letter is attached as Exhibit 1. Plaintiff also sent copies of the Notice Letter to the

Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region 1, and the Massachusetts Department of Environmental Protection.

4.      More than sixty days have passed since Plaintiff mailed Defendants its Notice Letter.  The Clean Water Act violations complained of in the Notice Letter are of a continuing nature, ongoing, or reasonably likely to re-occur.  Defendants remain in violation of the Clean Water Act.  As of the filing of this Complaint, neither EPA nor Massachusetts has commenced an enforcement action to redress the violations identified in the Notice Letter.

5.      Venue is appropriate in the District of Massachusetts pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b)(2), because MassDevelopment and DEC's municipal separate storm sewer system and the Clean Water Act violations that are the subject of this Complaint are located in Massachusetts.

## PARTIES

6.      Plaintiff Conservation Law Foundation is a non-profit, member-supported environmental advocacy organization.   With approximately 3,350 members, including approximately 2,900 members in Massachusetts, Conservation Law Foundation uses the law, science, and the market to solve problems threatening natural resources and communities. Conservation Law Foundation has a long history of working to protect the health of New England's and Massachusetts' water resources, including addressing significant sources of pollution, including but not limited to stormwater.  For more than a decade, Conservation Law Foundation has actively worked to protect the waters of the Commonwealth, including the waters comprising the Nashua River watershed—which has been designated by the Environmental Protection Agency to contain the Squannassit Area of Critical Environmental Concern—from pollution associated with growth and development, including stormwater pollution.  Conservation Law Foundation

4

members use and enjoy New England's and Massachusetts's water resources, including but not limited the Nashua River and other waters of the United States that are part of the Nashua River watershed, for boating, swimming, fishing, sightseeing, and other recreational and aesthetic purposes.  Conservation Law Foundation has worked to ensure the Nashua River watershed receives the full protections of the Clean Water Act.  Where necessary, Conservation Law Foundation engages in advocacy, including enforcement actions, to end illegal pollution and secure Clean Water Act compliance.  Restoring and protecting water quality is critical to Conservation Law Foundation's members' use and enjoyment of waters, including the Nashua River and other waters associated with the Nashua River watershed.  Conservation Law Foundation's members have been and are adversely affected by MassDevelopment and DEC's violations of the Clean Water Act and, until such time as Defendants come into compliance, will continue to be so.

7.    Defendants MassDevelopment and DEC are public bodies in the Commonwealth of Massachusetts.

8.    MassDevelopment and DEC are the owners and/or operators of the Devens Regional Enterprise Zone ("Devens"), consisting of approximately 4,400 acres within the three towns of Ayer, Harvard, and Shirley, Massachusetts.

9.    MassDevelopment and DEC are responsible for managing stormwater at Devens in compliance with the Clean Water Act.

10.    DEC is vested with broad regulatory authority related to land use planning and permitting functions at Devens.

11. DEC has adopted a comprehensive set of regulations for Devens, which set of regulations constitute the principal means for controlling the land development activities within Devens.

12. Defendant Lauren A. Liss is the President and Chief Executive Officer of MassDevelopment and, in this official capacity, is responsible for ensuring that MassDevelopment and Devens operate in a manner that complies with the Clean Water Act.

13. Defendant Jay Ash is the Chair of MassDevelopment and, in this official capacity, is responsible for ensuring that MassDevelopment and Devens operate in a manner that complies with the Clean Water Act.

14. Defendant Brian Kavoogian is the Vice Chair of MassDevelopment and, in this official capacity, is responsible for ensuring that MassDevelopment and Devens operate in a manner that complies with the Clean Water Act.

15. Defendants James E. Chisholm, James W. Blake, Karen Grasso Courtney, Patricia McGovern, Grace Fey, Rachel Madden, Juan Carlos Morales, and Christopher P. Vincze as Board Members of MassDevelopment and, in this official capacity, are responsible for ensuring that MassDevelopment and Devens operate in a manner that complies with the Clean Water Act.

16. Defendant William P. Marshall is the Chairman of DEC and, in this official capacity, is responsible for ensuring that DEC and Devens operate in a manner that complies with the Clean Water Act.

17. Defendants William Castro, Dix Davis, Armen Demerijan, James E. DeZutter, Melissa Fetterhoff, Christopher Lilly, John Oelfke, Jim Pinard, Martin Poutry, J. Paul Routhier, and Eric Stoltzfus, as DEC Board Members, in this official capacity, are responsible for ensuring that DEC and Devens operate in a manner that complies with the Clean Water Act.

18.    MassDevelopment and DEC own and operate a small municipal separate storm sewer system in Devens pursuant to 40 C.F.R. §§ 122.26(b)(8) and (16).  Specifically, Devens constitutes a system of conveyances discharging pollutants (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains), which are: (1) designed or used for collecting or conveying stormwater that is not a combined sewer or publicly owned treatment works, and (2) owned or operated by a public body created pursuant to state law and having jurisdictional authority over stormwater.

## STATUTORY BACKGROUND

19.    Massachusetts state law provides "[t]he exercise by the [Devens Enterprise Commission] of its powers and the discharge of its duties shall be deemed and held to be the performance of an essential government function." 1993 Mass. Acts ch. 498 § 9.

20.    DEC has a governing body of twelve members appointed by the Governor, six of whom are nominated from the neighboring towns of Ayer, Harvard, and Shirley (two commissioners from each town).  *Id.*

21.    Massachusetts state law provides "[t]he [Massachusetts Development Finance Agency] is hereby constituted a public instrumentality and the exercise by the Agency of the powers conferred by this chapter shall be deemed to be the performance of an essential governmental function." MASS. GEN. LAWS ch. 23G, § 2(a) (2018).  MassDevelopment is governed by a board of directors consisting of the Secretary of Administration and Finance and the Director of Economic Development, or their respective designees, and nine members to be appointed by the governor.  MASS. GEN. LAWS ch. 23G, § 2(b) (2018).

22.    MassDevelopment and DEC "shall prepare a Reuse Plan and associated zoning bylaws for Devens as provided for in this section, hereinafter referred to as the "Reuse Plan and

Bylaws." 1993 Mass. Acts ch. 498 § 10.  The purpose of the Reuse Plan and Bylaws will be to establish objectives, policies and standards to guide public and private decision-making and investment and to ensure the maintenance of quality of life and the protection of natural resources." *Id.*

23.    Further, the Reuse Plan prepared by MassDevelopment and DEC concerns the allocation "of land for public facilities such as schools, libraries, hospitals, police and fire stations, churches and playgrounds; and (iv) the allocation of land for transportation and circulation, including existing and proposed roads, rail and mass transit, parking, bicycling and pedestrian circulation." *Id*.

24.    Additionally, the Reuse Plan "shall also contain a utilities component, which shall describe the distribution of water, sewer, gas, electrical, telephone, cable television, refuse collection and disposal and other similar services, whether public or private, and an implementation component, which shall address methods for achieving realization of the Reuse Plan, including regulatory programs, tax and other economic incentives and inducements, and direct capital investment." 1993 Mass. Acts ch. 498 § 10.

25.    The Clean Water Act is the principal federal statute enacted to protect the quality of the Nation's surface water resources.  *See* Clean Water Act § 101 *et seq*., 33 U.S.C. § 1251 *et seq*.

26.    The stated goal of the Clean Water Act is "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." Clean Water Act § 101(a)(1), 33 U.S.C. § 1251(a)(1).

27.    Section 301 of the Clean Water Act, 33 U.S.C. § 1311, prohibits the discharge of any pollutant, by any person, from any point source, Clean Water Act § 502(12)(A), 33 U.S.C.

8

§ 1362(12)(A), to the waters of the United States, Clean Water Act § 502(7), 33 U.S.C. § 1362(7), except where expressly authorized under valid National Pollutant Discharge Elimination System ("NPDES") permits issued by EPA or an EPA-delegated State permitting authority, 40 C.F.R. § 122.2.

28.    "Point source" is defined broadly under Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14), to include, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

29.    The Commonwealth of Massachusetts has not sought authorization for a state-administered NPDES program pursuant to Section 402(b) of the Clean Water Act, 33 U.S.C. § 1342(b).  Therefore, in Massachusetts, the NPDES permit program is administered by EPA pursuant to Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a).

30.    Small municipal separate storm sewer systems are required to obtain NPDES permit coverage for their stormwater discharges, pursuant to the statutory mandate set forth in Section 402(p)(6) of the Clean Water Act, 33 U.S.C. § 1342(p)(6). 40 C.F.R. §§ 122.30–.37.

31.    A "municipal separate storm sewer" is defined as a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains), (i) owned or operated by a public body created by or pursuant to State law having jurisdiction over disposal of sewage, industrial wastes, stormwater, or other wastes, (ii) designed or used for collecting or conveying stormwater, (iii) which is not a combined sewer, and (iv) which is not part of a Publicly Owned Treatment Works. 40 C.F.R. § 122.26(b)(8).

32.    "Small municipal separate storm sewer systems" are defined in pertinent part as separate storm sewers that are (i) owned or operated by a public body created by or pursuant to State law having jurisdiction over disposal of sewage, industrial wastes, stormwater, or other wastes, and (ii) not defined as large or medium municipal separate storm sewer systems or designated by the EPA as contributing to a violation of a water quality standard or pollutants to waters of the United States.  Small municipal separate storm sewer systems include systems similar to separate storm sewer systems in municipalities, such as systems at military bases, large hospital or prison complexes, and highways and other thoroughfares. *Id*. § 122.26(b)(16).

33.    Small municipal separate storm sewer system operators are required to obtain NPDES permit coverage if their small municipal storm sewer system is located in an urbanized area as determined by the latest Decennial Census by the Bureau of the Census. *Id* § 122.32.

34.    NPDES permit coverage for small municipal storm sewer systems can be obtained under either a general permit, such as EPA's 2003 General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems, or under an individual permit tailed to the site-specific characteristics of the system, as set out in 40 C.F.R. § 122.33.

35.    Part II.A. of EPA's 2003 General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems requires regulated small municipal separate storm sewer system operators in Massachusetts to, at a minimum, develop, implement, and enforce a stormwater management program, which must detail the stormwater control practices that will be implemented consistent with permit requirements to reduce the discharge of pollutants from the small municipal separate storm sewer systems to the maximum extent practicable. 40 C.F.R. § 122.34.

36.     Part I.B.2.(k) of EPA's 2003 General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems provides that discharges are not authorized under permit that "would cause or contribute to instream exceedance of water quality standards. The storm water management program must include a description of BMPs that will ensure this will not occur . . . ."

37.     Part I.B.2.(l) of EPA's 2003 General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems provides that discharges are not authorized under the permit "of any pollutant into any water for which a Total Maximum Daily Load (TMDL) has been established or approved by EPA unless the discharge is consistent with the TMDL . . ."

38.     Part I.B.2.(i) of EPA's 2003 General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems provides that discharges are not authorized under the permit that are "prohibited under 40 CFR 122.4 [sic]. This includes discharges not in compliance with the state's antidegradation policy."

39.     Part I.C of EPA's 2003 General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems provides that discharges "must determine whether storm water discharges from any part of the MS4 contribute, either directly or indirectly, to a 303(d) listed water body" and must, in their stormwater management program, describe "how the program will control the discharge of the pollutants of concern and ensure that the discharges will not cause an instream exceedance of the water quality standards."

40.     Part I.D of EPA's 2003 General Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems provides that if a Total Maximum Daily Load ("TMDL") has been approved for any water body into which the MS4 discharges, the discharger must determine whether the approved TMDL is for a pollutant likely to be found in stormwater

11

discharges from the MS4 and determine whether the TMDL includes a pollutant waste load allocation, BMP recommendations or other performance requirements for storm water discharges. If the MS4 is required to implement stormwater waste load allocation provisions of the TMDL, the discharger must assess whether the waste load allocation is being met through implementation of existing stormwater control measures or if additional control measures are necessary.  The MS4 must also highlight in the stormwater management program and annual reports all control measures currently being implemented or planned to be implemented to control pollutants of concern identified in approved TMDLs, include a schedule of implementation for all planned controls, and document the assessment which demonstrates that the waste load allocation will be met including any calculations, maintenance log books, or other appropriate controls.

41.    Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

42.    Such enforcement action under Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), includes an action seeking remedies for unauthorized discharge under Section 301 of the Clean Water Act, 33 U.S.C § 1311, as well as for violation of a permit condition under Sections 402 and 505(f) of the Clean Water Act, 33 U.S.C. § 1342, and Section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f).

43.    Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per day per violation for all Clean Water Act violations occurring between January 12, 2009 and November 2, 2015; up to $51,570 per day per violation for all CWA violations occurring after November 2, 2015 and assessed on or after August 1, 2016 but before

January 15, 2017; and up to $52,414 per day per violation for all Clean Water Act violations occurring after November 2, 2015 and assessed on or after January 15, 2017, and up to $53,484 for penalties assessed on or after January 15, 2018 for violations that occurred after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365(a), and to 40 C.F.R. §§ 19.1–.4.

## FACTUAL BACKGROUND

44.  Stormwater runoff contains a wide variety of pollutants, including priority organics, toxic chemicals, oil and grease, metals, nutrients, organic constituents, suspended solids, and pathogens. Stormwater runoff and surface water discharges from municipal separate storm sewers are a major cause of water quality impairment in rivers, lakes, estuaries and coastal areas across the United States and in Massachusetts. Stormwater runoff causes exceedances of water quality standards by contributing significant amounts of pollution to receiving waters, changing natural hydrologic patterns, accelerating stream flows, destroying aquatic habitat, and elevating pollutant concentrations and loadings.

45.  Stormwater is the leading cause of impaired water quality in Massachusetts.

46.  Devens encompasses more than 6 million square feet of development and includes systems of conveyances, including roadways, storm drains, storm sewers, and drainage ditches.

47.  Over 100 companies are located in Devens.[1]

48.  Over 4,500 people work in Devens.[2]

---

[1] U. Mass. Donahue Institute, *Businesses and Organizations Located in Devens, Massachusetts: Profile and Economic Contributions for 2016*, 3 (Sept. 2016) ("Of the 102 Devens establishments, 76 percent are private businesses, 18 percent are nonprofits, and the remainder are government entities.").

[2] Mass. Dev. Fin. Agency, *Devens Annual Report 2017* 7 (Jan. 1, 2018) ("Devens employs nearly 5,000 workers and contributes more than $2.5 billion to the Massachusetts economy.").

49.     MassDevelopment reported revenues of $60,790,998 and assets valued at $535,759,348 in 2016.[3]

50.     DEC reported revenues of $626,354 and assets valued at $1,601,611 in 2016.[4]

51.     Devens is a small city or municipality.  According to Devens' draft Stormwater Pollution Prevention Plan, Devens is "functionally equivalent to a small city."[5]  Moreover, the Devens Reuse Plan notes Devens has "an infrastructure similar to that of a small city including water supply, sanitary sewerage, stormwater drainage, electric power, natural gas, and telecommunications."[6]

52.     Devens generates stormwater runoff containing pollutants from streets, roofs, municipal buildings, municipal infrastructure, and parking lots.  These pollutants include, but are not limited to, heavy metals, nutrients, bacteria, hydrocarbons, and other toxic chemicals.

53.     According to the EPA, which compiles Waterbody Quality Assessment Reports, water quality is impaired for a number of waters into which Devens discharges stormwater directly or indirectly.  Devens discharges into the main stem of the Nashua River  (Waterbody ID MA81-04), the North Nashua River  (Waterbody ID MA81-05), Nonacoicus Brook  (Waterbody ID MA81-17), Mirror Lake  (Waterbody ID MA81085), Grove Pond  (Waterbody ID MA81053), Plow Shop Pond  (Waterbody ID MA81103), Robbins Pond  (Waterbody ID MA81111), Spectacle Pond  (Waterbody ID MA81132), Catacoonamug Brook  (Waterbody ID MA81-16), Mulpus Brook  (Waterbody ID MA81-37), the following waterbodies located within a subwatershed that

---

[3] Mass. Dev. Fin. Agency, *Massachusetts Development Finance Agency Financial Statements* 5, 11 (June 30, 2017).

[4] Devens Enter. Comm'n, *Devens Enterprise Commission FY16 Audit Report* 3–4 (June 30, 2016).

[5] DEVENS STORMWATER POLLUTION PREVENTION PLAN 3 (draft July 1995) ("The North and Main Posts of Devens are functionally equivalent to a small city").

[6] DEVENS  REUSE PLAN 45–48 ( Nov. 14, 1994).

drains into the Nashua River: Bowers Brook, Willow Brook (sometimes referred to as Willow Branch), Cold Spring Brook, and Little Mirror Lake, and Spectacle Brook and Ponakin Brook, which both "drain through the western part of [the] South Post to the North Nashua River" (collectively, the "Receiving Waterbodies").  The above Receiving Waterbodies are all within the Nashua River watershed.  EPA has designated these waterbodies variously as habitats for "fish, shellfish, and wildlife protection and propagation," "aquatic life harvesting," and recreation.

54.     Pursuant to Section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d), EPA has designated the Receiving Waterbodies as impaired for failure to meet minimum water quality standards.  The Receiving Waterbodies are variously impaired for pesticides (including DEHP, or Di-sec octyl phthalate), pathogens (including Escherichia coli, or E. coli), arsenic, phosphates, chromium, total toxics (including polycyclic aromatic hydrocarbons (PAHs) in aquatic ecosystems and sediment bioassays for acute freshwater toxicity), nuisance exotic species (non-native aquatic plants), and noxious aquatic plants.

55.     Devens' stormwater discharges contain pollutants including, but not limited to: petroleum hydrocarbons, nitrogen, total suspended solids, perfluorooctanesulfonate ("PFOS"), perfluorooctanoate ("PFOA"), zinc, metals and other pollutants.  Devens' outfalls that discharge stormwater with some combination of the above pollutants, discharge directly or indirectly into the Receiving Waterbodies, including Nashua River, the North Nashua River, Nonacoicus Brook, Mirror Lake, Grove Pond, Plow Shop Pond, Robbins Pond, Spectacle Pond, Catacoonamug Brook, Mulpus Brook, and the following waterbodies located within a subwatershed that drains into the Nashua River: Bowers Brook, Willow Brook (sometimes referred to as Willow Branch), Cold Spring Brook, Little Mirror Lake, Spectacle Brook, and Ponakin Brook.

56. In 1993,[7] Devens was established as a regional enterprise zone by the Commonwealth of Massachusetts: "The Devens Regional Enterprise Zone is hereby created. Plans and descriptions detailing the precise boundaries and configuration of the Devens Regional Enterprise Zone will be prepared by the Bank, approved by the Board of Selectmen of each Town, and filed with the Secretary, the House and Senate Committees on Ways and Means and recorded in the Middlesex County Registry of Deeds and the Worcester county Registry of Deeds." 1993 Mass. Acts ch. 498 § 8.

57. Devens was previously used as a U.S. Army Military Base, which closed in 1995. In 1994, the Massachusetts legislature established the Devens Enterprise Commission, whose primary responsibility was to review and approve all future uses of Devens; the legislature also designated MassDevelopment as the exclusive public agency responsible for acquisition, control, maintenance, and redevelopment of Devens.

58. Devens is a regional enterprise zone of the Commonwealth of Massachusetts with jurisdiction over disposal of sewage, industrial wastes, stormwater, or other wastes.

59. Devens operates independently from Shirley, Harvard, and Ayer, administering its own zoning regulations, which are controlled by an agreement with the federal government.[8]

60. MassDevelopment and DEC operate a small municipal separate storm sewer system at Devens, which is located in an urbanized area as determined by the latest Decennial Census by the Bureau of the Census.

---

[7] Devens was created by the 1993 Act, which was in force in 1994. Fort Devens was disbanded in December 1995, and the Land Bank finalized purchase with the U.S. Department of Defense on January 1, 1996. *See* 1993 Mass. Acts ch. 498 § 10**.**

[8] *See* Inst. for Int'l Urb. Dev., *A Case Study of Fort Devens: The Transition to Civilian Use* 10 (Nov. 2008), http://i2ud.org/documents/Case%20Studies/Fort%20Devens_IIUD_2008.pdf (noting how after 1994 vote, the towns "ceded control over zoning, taxation, and reuse control.").

16

61.    U.S. Army Military Base Fort Devens maintained a sanitary sewer system and a separate storm sewer system, which remain in place at Devens.

62.    Stormwater collection systems drain a large portion of Devens. U.S. Army Military Base Fort Devens developed drainage ditches and storm sewers, which still exist at Devens, designed to collect stormwater runoff and ultimately convey it to navigable waters.

63.    MassDevelopment and DEC are responsible for conducting maintenance on the roads, ditches, catch basins, and storm drains at Devens.

64.    The 2003 Massachusetts small municipal separate storm sewer system permit is designed to require operators of municipal separate storm sewer systems like MassDevelopment and DEC to reduce the discharge of pollutants from their municipal systems to the maximum extent practicable, and includes the following requirements to address discharges from small municipal separate storm sewer systems, among others:

a. Operators like MassDevelopment and DEC must develop, implement, and enforce a stormwater management program;

b. Operators like MassDevelopment and DEC must address stormwater runoff from new development and redevelopment;

c. Operators like MassDevelopment and DEC must reduce pollutants in stormwater runoff from construction activities; and

d. Operators like MassDevelopment and DEC must provide opportunities for the public to participate in the development, implementation and review of the operator's stormwater management program.

65.    Neither MassDevelopment nor DEC, nor any other entity on MassDevelopment and DEC's behalf, has, as of the date of this complaint, obtained coverage under the general or individual NPDES permitting programs for municipal separate storm sewer systems at Devens.

## CLAIMS FOR RELIEF

### Count I – Violations of Clean Water Act
### Failure to Obtain and Comply with Small Municipal Separate Storm Sewer System ("Small MS4") Permit

66.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

67.    Operators of small municipal separate storm sewer systems located in an urbanized area as determined by the latest Decennial Census by the Bureau of the Census are automatically required to obtain coverage under a small municipal separate storm sewer system permit, 40 C.F.R. § 122.32(a), by availing themselves of one of the three alternatives for NPDES permit coverage set forth at 40 C.F.R. § 122.33.

68.    EPA is the relevant Clean Water Act NPDES permitting authority for MassDevelopment and DEC.  In May 2003, EPA issued a General Permit for Stormwater Discharges from Small Municipal Storm Sewer Systems that applies to small municipal separate storm sewer systems in the Commonwealth of Massachusetts.

69.    A new "Massachusetts Small MS4 General Permit" is scheduled to go into effect on July 1, 2018.

70.    The individual NPDES permit option for the small municipal separate storm sewer system at Devens has been available to MassDevelopment and DEC since at least 2010 and remains available as a way for defendants to obtain NPDES permit coverage.

71.     MassDevelopment and DEC operate a small municipal separate storm sewer system at Devens, which is located in an urbanized area as determined by the latest Decennial Census by the Bureau of the Census.  Thus, MassDevelopment and DEC are required to obtain coverage under a small municipal separate storm sewer system permitting program.  *Id.*

72.     Each and every day since at least June 19, 2013, on which MassDevelopment and DEC have discharged and continue to discharge stormwater from their municipal separate storm sewer system at Devens without authorization under a small municipal separate storm sewer system permit is a separate and distinct violation of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

**Count II – Violations of Clean Water Act**
**Unauthorized Discharge of Pollutants into Waters of the United States**

73.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

74.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with an NPDES permit issued pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

75.     Operators of a small municipal separate storm sewer system in the Commonwealth of Massachusetts are required to obtain Clean Water Act permit coverage under the small municipal separate storm sewer system permitting program.

76.     In order to be authorized to discharge lawfully under the small municipal separate storm sewer system permit, operators of small municipal separate storm sewer systems must meet the requirements set forth in this permitting program.

77. These municipal separate storm sewer system permit requirements are more stringent than the requirements set out in permits for discharges of stormwater associated with industrial activity.

78. These municipal separate storm sewer system permit requirements are designed to reduce the discharge of pollutants from the municipal separate storm sewer system to the maximum extent practicable. These requirements that are applicable to municipal separate storm sewer systems, rather than industrial dischargers, include (a) addressing stormwater runoff from new development and redevelopment, (b) reducing pollutants in stormwater runoff from construction activities, (c) implementing public outreach and participation programs, and (d) developing, implementing, and enforcing a stormwater management program, which must detail the stormwater control practices that are implemented consistent with permit requirements to minimize the discharge of pollutants. 40 C.F.R. § 122.34.

79. MassDevelopment and DEC are operators of a small municipal separate storm sewer system in the Commonwealth of Massachusetts that has not obtained coverage under a general or individual small municipal separate storm sewer system permit.

80. MassDevelopment and DEC discharge stormwater containing pollutants from their municipal separate storm sewer system at Devens in violation of the Clean Water Act into the Receiving Waters described in paragraph 53, which are waters of the United States within the Nashua River watershed.

81. MassDevelopment and DEC's discharge of stormwater from their municipal separate storm sewer system at Devens are discharges of pollutants within the meaning of Section 502(12) of the Clean Water Act, 33 U.S.C. § 1362(12), as well as "point source" discharges into waters of the United States.

82.     Municipal separate storm sewer system discharges at Devens discharge pollutants to waters of the United States in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

83.     Since at least June 19, 2013, MassDevelopment and DEC have discharged and continue to discharge stormwater from the municipal separate storm sewer system at Devens without obtaining coverage under a valid NPDES small municipal separate storm sewer system permit as required by Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

84.     MassDevelopment and DEC have discharged and continue to discharge stormwater containing pollutants from their small municipal separate storm sewer system at Devens without permit coverage since at least June 19, 2013.  Each discharge constitutes a distinct violation of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

**Count III – Violations of Clean Water Act**
**Failure to Develop, Update, Evaluate, Implement, and Enforce a Stormwater Management**
**Program**

85.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

86.     Operators of regulated small municipal separate storm sewer systems are required to develop, implement, and enforce a stormwater management program designed to reduce the discharge of pollutants from the small municipal separate storm sewer system to the maximum extent practicable, to protect water quality, and to satisfy the appropriate water quality requirements of the Clean Water Act, which plan must include the minimum control measures described in 40 C.F.R. § 122.34(b).

87.     As an operator of a regulated small municipal separate storm sewer system, MassDevelopment and DEC are required to develop, implement, and enforce a stormwater management program. 40 C.F.R. § 122.34(a).

88.     MassDevelopment and DEC have failed and continue to fail to develop and implement a complete stormwater management program for Devens.

89.     Each and every day since at least June 19, 2013, on which MassDevelopment and DEC have failed and continue to fail to develop and fully implement a complete and accurate stormwater management program for Devens, and to keep such stormwater management program on file at Devens together with all other required documentation, is a separate and distinct violation of the small municipal separate storm sewer system permit and Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

### Count V – Violations of Clean Water Act
### Failure to Reduce Pollutants to the Maximum Extent Practicable

90.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

91.     Operators of regulated small municipal separate storm sewer systems are required to develop, implement, and enforce a stormwater management program designed to, *inter alia*, reduce the discharge of pollutants from the small municipal storm sewer system to the maximum extent practicable.

92.     As an operator of a regulated small municipal separate storm sewer system, MassDevelopment and DEC are required to reduce the discharge of pollutants from the small municipal storm sewer system to the maximum extent practicable as part of its stormwater management program. 40 C.F.R. § 122.34(a).

93.    MassDevelopment and DEC have failed and continue to fail to reduce the discharge of pollutants from its regulated small municipal separate storm sewer system to the maximum extent practicable.

94.    Each and every day since at least June 19, 2013, on which MassDevelopment and DEC have violated or continue to violate the requirement that they reduce the discharge of pollutants to the maximum extent practicable is a separate and distinct violation of the small municipal separate storm sewer system permit and Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

### Count VI – Violations of Clean Water Act
### Failure to Implement Minimum Control Measures

95.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

96.    As part of a stormwater management program, operators of regulated small municipal separate storm sewer systems are required to implement certain minimum control measures:

a.    Public education and outreach on stormwater impacts (including a public education program to distribute educational materials to the community or conduct equivalent outreach activities about the impacts of stormwater discharges and the steps that the public can take to reduce pollutants in stormwater runoff);

b.    Public involvement/participation (including providing opportunity for the public to participate in the development, implementation and review of the stormwater management program);

23

c.    Illicit discharge detection and elimination, in the form of a program to detect and eliminate illicit discharges, as defined by 40 C.F.R. §122.26(b)(2);

d.    Construction site stormwater runoff control;

e.    Post-construction stormwater management in new development and redevelopment; and

f.    Pollution prevention/good housekeeping for municipal operations.

97.    MassDevelopment and DEC have failed and continue to fail to implement the minimum control measures as required under 40 C.F.R. §122.26(b).

98.    Each and every day since at least June 19, 2013, on which MassDevelopment and DEC have failed to implement minimum control measures is a separate and distinct violation of the small municipal separate storm sewer system permit and Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

**Count VII – Violations of Clean Water Act**
**Failure to Carry Out Required Reporting and Recordkeeping**

99.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

100.    Operators of municipal separate storm sewer systems are required to comply with reporting and recordkeeping pursuant to 40 C.F.R. §122.34(g)(2) and the applicable small municipal separate storm sewer system permit.

101.    Reporting and recordkeeping requirements include: (1) keeping and making available to the public information used in the development of the stormwater management program, monitoring, reports, and data used in the development of the Notice of Intent for at least five years and (2) submitting an annual report to EPA.

102.    MassDevelopment and DEC have failed and continue to fail to carry out the required reporting and recordkeeping pursuant to 40 C.F.R. §122.34(g)(2) and the applicable small municipal separate storm sewer system permit for Devens.

103.    Each and every day since June 19, 2013, on which MassDevelopment and DEC have operated and continue to operate Devens without complying with the required reporting and recordkeeping for Devens pursuant to the Massachusetts small municipal separate storm sewer system permit is a separate and distinct violation of the small municipal separate storm sewer system permit and Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

<b>Count VIII – Violations of Clean Water Act</b>

104.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

105.    Operators of municipal separate storm sewer systems are required to comply with the applicable small municipal separate storm sewer system permit, including the provisions referenced in paragraphs 33 to 40 of this Complaint.

106.    MassDevelopment and DEC have failed and continue to fail to comply with these permit requirements, including as set out in (a)-(c) below,

a.    MassDevelopment and DEC have failed to meet the requirements of Part I.B.2.(k) of EPA's 2003 General Permit for Stormwater Discharges from Small MS4s.

b.    MassDevelopment and DEC have failed to meet the requirements of Part I.B.2.(l) of EPA's 2003 General Permit for Stormwater Discharges from Small MS4s.

c.    MassDevelopment and DEC have failed to meet the requirements of Part I.B.2.(i) of EPA's 2003 General Permit for Stormwater Discharges from Small MS4s.

d.      MassDevelopment and DEC have failed to meet the requirements of Part I.C of EPA's 2003 General Permit for Stormwater Discharges from Small MS4s.

e.      MassDevelopment and DEC have failed to meet the requirements of Part I.D of EPA's 2003 General Permit for Stormwater Discharges from Small MS4s.

107.   Each and every day since June 19, 2013, on which MassDevelopment and DEC have failed operated and continue to operate Devens without complying with the applicable Small MS4 permit provisions, including the provisions referenced in paragraphs 106(a) through (e) above, is a separate and distinct violation of the Small MS4 permit and Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

## RELIEF REQUESTED

108.   Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.      Declare MassDevelopment and DEC to have violated and to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for their unlawful and unauthorized discharges of pollutants into waters of the United States;

b.      Declare MassDevelopment and DEC to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to timely seek coverage under a general or individual Small MS4 permit and failure to comply with all applicable requirements of that permit's NPDES program for Devens;

c.      Enjoin MassDevelopment and DEC from discharging pollutants from Devens and into the surface waters surrounding and downstream from Devens, except as authorized by and in compliance with a general or individual Small MS4 permit.

d.      Order MassDevelopment and DEC to comply fully and immediately with all applicable requirements of the Small MS4 permit applicable to Devens;

26

e.      Order MassDevelopment and DEC to pay civil penalties of up to $37,500 per day per day per violation for all Clean Water Act violations occurring between January 12, 2009 and November 2, 2015; up to $51,570 per day per violation for all CWA violations occurring after November 2, 2015 and assessed on or after August 1, 2016 but before January 15, 2017; up to $52,414 per day per violation for all Clean Water Act violations occurring after November 2, 2015 and assessed on or after January 15, 2017, and up to $53,484 for penalties assessed on or after January 15, 2018 for violations that occurred after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4;

f.      Order MassDevelopment and DEC to take appropriate actions to restore the quality of waters harmed by its discharges and to remedy harm to the surrounding ecosystems and communities affected by MassDevelopment and DEC's noncompliance with the Clean Water Act;

g.      Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

h.      Award any such other and further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff requests a jury trial on the issue of liability and any other issue cognizable by a jury.

Respectfully submitted,

27

CONSERVATION LAW FOUNDATION, INC.

Dated:  June 19, 2018

By its attorney,

/s/ Zachary K. Griefen
Zachary K. Griefen, Esq.
Conservation Law Foundation
BBO No. 665521
15 East State Street, Suite 4
Montpelier, VT 05602
802.223.5992 x4011
zgriefen@clf.org